Good morning. Please proceed. I understand that everyone is here except for one lawyer on the fourth case. Hopefully that lawyer shows up. In the meantime, we will proceed. We are grateful to have Judge Engelmeyer of the Southern District with us this morning. We will hear the first case, Exar v. Bedford. Good morning, Your Honors. Sharad Nirmal for the Plaintiff's Appellants. This is an appeal from a dismissal of a securities fraud case brought by two institutional investors against Republic Air, a regional airline, and its CFO and CEO. The Plaintiffs allege that they directly relied on the statements that it issued in this case, statements that the District Court dismissed as non-actionable statements or opinion statements that were not adequately pled as false. Plaintiff's Appellants believe that the District Court committed basic errors in interpreting the allegations of their complaint and drawing inferences against plaintiffs in violation of basic principles that have been enunciated by this Court. To start, just a brief factual background. May I just ask you? Judge Kaplan broke down the categories of allegedly actionable statements into four categories, not to put you to a Sophie's Choice, but which do you think now is your strongest? So, and if we've laid out in tabular form in our reply brief the statements that I'd issue, we believe that the statements that defendant Allman and Bedford made with regard to whether they were in breach of the co-chair agreements in August of 2015 and in October of 2015 were misleading, if not outright false. The reason is that at the time those statements were made, as they later admitted in the bankruptcy proceeding, they had been in breach of the co-chair agreements all the way back to February of 2015. What do you mean by in breach? You mean they weren't actually flying the times that they were permitted to fly, right? Well, is that what you mean, yes or no? You can explain, but I want to know the answer to the question. By breach, do you mean that as a matter of fact they were not fulfilling their contractual obligation to fly as many hours as they were committed to? Is that what you mean? Correct, that's what we mean. And now, and then the second question is, didn't everyone know that? So in addition to that, in addition to the fact that everyone knew that they weren't flying the flights that they said they would fly, they hadn't gotten permission to do that from the co-chair partisan. That's the critical distinction. And where is the allegation of that as of the time that the statement was made? In other words, you have alleged quite clearly that Delta had rebuffed certain proposals as late as April. On the other hand, as I read paragraph 63 of the complaint, it says that due to Republic's failure to perform, Delta was left with no other choice but to significantly reduce Delta's flying hours. So apparently at some point, you agree, Delta did agree to reduce the flying hours. Well, but the point there is not that in the way that we pled that, and this is what Delta had alleged in its lawsuit and was subsequently unsealed, they were forced to accept this unilateral modification of the agreement, or else they wouldn't operate the flights that they told their consumers that they would fly. So that doesn't amount to an acquiescing into the modification that Republic had unilateralized. That may or may not, but that's a legal question, is it not? Well, I think it's a factual question because the statements that defendants were making at this time were that they were getting support. They were grateful for the support and cooperation that they were receiving from the co-chair partners, but that was not the case. You can't interpret a repudiation of a request to modify the terms of the contract in January, in April, and then again in August as the airlines acquiescing. Well, that's a separate issue. That's a separate claim that Judge Kaplan identified, which is the factual issue of whether or not there had been a quote-unquote agreement with the partners. You seem to be focusing your claim on the litigation assessment, if you will, about whether or not there was a breach. Well, Judge Kaplan, his view of whether or not there was a breach was whether it's a legal question. Did the company believe in saying that we're not in breach, have a belief in that? In that context, do you expect a company to say, oh yeah, we're in breach when there's litigation or impending litigation? Well, the question is, can a reasonable investor take from companies... I mean, there may be many defenses, even if you're not meeting the requirement of ours, there may be other defenses. It's not necessarily legally a breach. So, and this is interesting how defendants have played this particular concept both ways. In the bank proceeding, which is the admission that we were in breach of the agreements going back to February 2015, defendants want to say that, well, that wasn't an admission of legal liability. That was... Well, that's kind of similar to the way the plaintiffs wanted the bankruptcy court to reject the settlement because there wasn't even a good faith claim by Delta that was worth settling. But then now here you take the other position. That's what happens in litigation. And maybe that's a reason to say they're liable, I suppose. But let's not have pots accusing kettles of things. I think it goes back to what is a reasonable investor understand by a company making the representation that we're not in breach. The representation is that we are complying with our agreements or that we've gotten permission to modify these agreements. Or that we're not complying, but there may be a legally available defense. I mean, we may be hearing in future months and years about the concept of force majeure. That's a defense that was articulated here. It was as yet unresolved. It was led by Republic in the litigation. Why can't Republic say, for better or worse, this is a defense we are articulating? And therefore, yes, it's true we haven't performed, but the performance was excused. Right. So it goes back to what statements should have accompanied that representation. I think if Republic has said, we are not performing under these agreements. We haven't gotten permission to do so, but we believe we have defenses. And so, therefore, I don't believe we're accruing liability. You're almost out of time. Why don't you address the alternative ground of loss causation? So we pled in the proposed amended complaint, a more traditional loss causation allegation of artificial inflation based upon the statements that were made throughout this period of time. And you disavowed that? We didn't disavow it. What we did in the original complaint, because really at its core, the harm to the plaintiffs here is the loss of their equity. Are you abandoning the other theory now? We're not. We've pled it in the alternative now in the proposed amended complaint. So we didn't disavow it. We didn't disclaim it. But what we did was we responded to defendants' arguments in the original complaint that we were required to plead a Dura-based loss causation theory. And we said, that's not what we're alleging in that complaint. But because Judge Kaplan found that we needed to plead additional facts, i.e. that we would have been extinguished but for the allowed claims in the bankruptcy, we now concede that one recourse for us is to plead this additional artificial inflation theory, which we have in the amended complaint. In addition to that, for purposes of our common law fraud claim, we've now also pled a holder claim, i.e. in reliance on these statements, the plaintiffs held their shares and those shares lost value. One of the plaintiffs bought additional shares after the Republic declared bankruptcy. The day after, that's right. And based on the filing, again, in the bankruptcy petition, the Republic claimed that the Delta lawsuits were unfounded without merit. Well, the Delta lawsuits were settled for 10 cents on the dollar of the claimed damage amount. And it wasn't even 10 cents of actual money. It was 10 cents on the dollar as an allowed claim in bankruptcy. And as far as I can see in the record, there's no indication of how much money, if any, Delta actually recovered. It would be entitled to its pro-rata share of resources of Republic's compared to other creditors based on $170 million claim, right? Ultimately, Delta got a stake in the new post-bankruptcy company in exchange for that allowed $170 million. A stake like the one that you had. And we were extinguished. You were extinguished? Yes. Thank you. All right. We'll hear from the other side. You have some time for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court. My name is Jay Kassner from Skadden Arps. I am here for Mr. Bedford, the current Chief Executive Officer of Republic, and Mr. Ullman, the current Chief Financial Officer of Republic. Before proceeding to argument, I just want to remind the Court that in the trial court before Judge Kaplan, four outside directors were also named as defendants. Judge Kaplan dismissed those four. In footnote three of the appellant's brief, they acknowledge that they are no longer pursuing claims against those directors and hence no longer appeal Judge Kaplan's dismissal. Your Honors asked a series of questions about whether Judge Kaplan should be affirmed. It is beyond dispute that during 2015 to 2016, Republic repeatedly disclosed to its investors, including what my friend characterizes as institutional investors, but who in fact are colloquially referred to as vulture funds that tend to buy when there is an opportunity in a distressed company. And it is therefore not surprising that not only has Judge Lynch acknowledged one of them bought after Republic declared bankruptcy, but they started buying in July of 2015 when Republic publicly disclosed that they had hired a restructuring advisor and that they were withdrawing their guidance, their financial guidance. And as your Honors know, and certainly as sophisticated vulture purchasers know, rescinding guidance means we can no longer stand behind what we are projecting into the future. Weren't there purchases that preceded that though? Yes. No, your Honor, excuse me, they were not. The purchases began after the July press release announcing that guidance had been rescinded. So the one statement here that appears more factual perhaps than the others is that Republic's partners had agreed to reduce flights. Putting aside the existence of a disclosure, I'm eager to hear what you have to say about that. Why isn't that at least fairly pled to be a factually incorrect statement? Agreement meaning something volitional as opposed to at the point of a gun. We literally don't have pilots to fly. Your Honors, because in the context in which those statements were made, that it accompanied the, we believe that we are not in breach. Because as Mr. Bedford said, we believe we have, and there's a little bit of, if you read the press release in the record, there's a little bit of garbled language, but the we have the support is in the context of a we believe. And so I think fairly read, that statement is part and parcel of the opinion. And hence, subject to... I understand the importance of earnings calls and the communication with analysts in the market. At the same time, I think I share what is implicit in your view that it's a little hard to interpret these things literally when questions are asked that are, let's just say, not the way a good lawyer would ask them in a deposition. And answers are given that are sort of oblique to the question and it's a little hard to figure out what's meant. But on May 8th, there's a Form 10-Q. And it says, we have agreed with the CodeShare partners to reduce schedules to improve our operational performances in the second half of 2015. And at least, we know that at least the complaint gives a fair ground of inference, that at least as of sometime in April, that was not true. So what are we to make of that? That's a formal statement. I don't see any we believe, at least in the immediate context of that. And it's a factual statement. It's not about we think they're supportive or some puffery like that. It says, we have agreed. Now, I mean, why shouldn't a judge give reasonable inferences that based on the in the Twombly sense that that is false? Judge Lynch, the facts alleged in the complaint, if anything, concede in paragraph 63, the accuracy of that allegation, as we've argued, and as I believe Your Honors may have acknowledged, there are no facts alleged in the complaint whatsoever to suggest that the company had told investors in January and February or in March or in April that they had the support of the CodeShare partners for an agreement. The first time that disclosure was made was in May. There are no factual allegations in the complaint to suggest that that was untrue as of May. I don't believe that there is any suggestion from counsel that that statement was speaking at an earlier point in time. What he seems to be saying is in January, they said no. In April, they said no. In May, as conceded in paragraph 63, they said yes. Why does that matter? You're saying it would be important that a district court be precluded by rules of pleading from offering rifle-shot discovery, asking you to disclose on what date this agreement that's referred to in paragraph 63 happened, and was that before or after May the 8th? Yes, Your Honor. They need to allege affirmatively the goods, and why that's relevant here is dictated not only by this Court's decision in express scripts, a panel on which Judge Chin sat that my friend Mr. Musoff argued, but also Judge Engelmeyer's opinion in the Xerox case. The reason for that is there is simply no obligation to disclose the facts. In fact, in express scripts, the facts were much more egregious than they are in this situation because in express scripts, there were negotiations between express scripts and Anthem over a contract in which Anthem was taking the position that their contract was not being acted on in good faith. There were terrible things going on behind the scenes in negotiation. Express scripts disclosed that the parties were negotiating. This Court specifically said, and again, it's also illustrated by Judge Engelmeyer in the Oklahoma Firefighters v. Xerox case, there is no duty to disclose the to and fro. Counsel would love to know everything that was going on in the negotiating room. I understand that, but the law does not require that, and therefore— Let me ask you to clarify something you said before to make sure I understand it. You said that neither of these plaintiffs purchased any shares until after the statement in July. I think it was withdrawing all previous guidance. That's correct, Judge Lynch. So is there any—are you making an argument that they could not possibly have relied on something from May that was effectively withdrawn in July? I think the inference that we're drawing—we did not argue below reliance. Boy, 10 minutes always goes so quickly. But I think it's a matter of sort of inference. It's probative, Your Honor, of the point we're making that these were not babes in the woods, and they fully understood what was going on. But since this is an actual reliance case and not a fraud on the market class action—these are two institutional investors—we did not make that argument. But I think this Court can take judicial notice of when they bought and what was said and what flows from that. Can we turn to the loss causation? Yes, please. One of your arguments appears to be that it is essentially impossible to entangle or disentangle within the settlement value the value that was a settlement retrospectively for partners' claims—Delta's claims, for example—versus the going forward constructive value of the refinancing. Why is that so, and why is that not the sort of thing as to which discovery would be appropriate, given the different statements all over the lot as to how the sum total seems to be characterized? Yes. Judge Engelmeyer, the Lentel decision of this Court specifically requires that there be some disentanglement like that. In the bankruptcy court and in the district court before Judge Forrest, there was absolutely no evidence whatsoever submitted by these two vulture funds when they were trying to get the bankruptcy court and the district court to prevent the settlement from occurring so that, as Judge Forrest noted in her opinion, they perhaps could provide dip financing to the debtor, which they had attempted to do. There was no evidence of disentanglement, so it's not my burden with respect to say how you could disentangle. It's not in the record, Judge. But I think our point is slightly different as well. Our point, the principal point, is the one that Judge Kaplan—may I finish? The point was that Judge Kaplan accepted, and which Judge Forrest and Judge Lane both noted, which is that the central premise of the loss causation point in the original complaint is that the plaintiff's equity was completely wiped out by virtue of these settlements, and that but for these settlements, that would not have occurred. Our principal argument, which Judge Kaplan accepted, is that there was a complete absence of any facts alleged in the complaint to demonstrate that that, in fact, was the case. As Judge Forrest noted in the bankruptcy court, there was nothing before her or before Judge Lane to suggest that they weren't wiped out regardless of what happened. Counsel said that Delta got 10 cents on the dollar as an allowed claim, and so the plaintiffs would have been way, way behind that. Correct. Correct, Your Honor. So anything to suggest that there was anything left at all for them? For the equity, Your Honor, there was nothing left. But their burden was to allege facts to demonstrate that but for these settlements, which were allegedly the product of, you know, fraudulent nondisclosure, they would have gotten something. They affirmatively—the record is clear. Before Judge Lane and before Judge Forrest, the two vulture funds affirmatively refused to put evidence before the court on that issue. I think that's the fourth time you've used the term vulture funds. Now, vultures are very useful critters in the world, and they get a bad rap, but I don't think a label is what matters. I think you might be better off sticking to the factual record of when they purchased and what was known in the market when they purchased, because I don't know that there is any allegation in the complaint, which is all that we have, as to what these funds do as a general practice or whether they proclaim themselves to be vultures or eagles or chipmunks. Very much. Okay. Thank you. Thank you. We'll hear the rebuttal. Let me just address the issue of burden that my colleague referred to with respect to lost causation. We're not at a summary judgment burden where we have to prove lost causation. The well-established pleading standard is inquiry notice. Sorry, it's notice pleading. Here, which you don't have in many cases of having essentially two rounds of litigation to draw upon, and what counsel says is even with that rather extensive record, there wasn't an ability to go through it and parse essentially what was attributable to the breach as opposed to what was attributable to the work out. The bankruptcy record is under seal by and large, so we can't rely on facts unless they become public, and that's why some of the facts that have been alleged here are based on the record that Judge Lane relied upon and Judge Forrest relied upon, including the quoted testimony. What is alleged to suggest that there would have been anything left at the end or that but for these settlements, the equity holders would have gotten anything out of it? The fact of the matter is that there was no equity. All the equity was extinguished, and the sum total of the claims that were allowed to the airlines was in excess of $635 million. The equity going into bankruptcy was $590 million. So what are the allegations that suggest that there was a loss that resulted from the alleged misrepresentation? The allegation is that from the record that's available to us, and this is an expert issue. We recognize that. This is an issue that would be developed after discovery. I'm not sure it's an expert issue. Isn't it just an issue of what were the debts that were claimed in the bankruptcy court by other creditors, and did they add up to less than the assets of Republic if the settlements were excluded? And our allegation is that the sum total of the airline, the allowed claims for the airline... No, no, no, no, no, no, no. You don't have my question, don't you? We don't have... What they are saying is that you have not alleged that you would not have been equally wiped out even absent these settlements. So the question, if that's a legitimate argument, and maybe you're going to say it isn't. I understand that. But if that's a legitimate argument about loss causation, it should be a simple matter to be able to allege that the other creditors amounted to $0.90 and that this whole bankruptcy was brought about just by these or whatever. At least the other creditors' claims amounted to less than the assets of Republic. That should be a simple thing to allege if it's true. If those particular facts as to what the ledger was with respect to each of the allowed claims was available. But I think at this stage, at the pleading stage, it should be sufficient for us to allege, and then ultimately have the burden to... Well, but when they declare bankruptcy, don't they schedule the claims that are against them? That wasn't available at the time that this was filed. We have your argument. Thank you.  We'll reserve...